The ESTATE OF Martha Marie BILLINGS, Deceased, Alice Lancaster, Agent of the Court, Plaintiff and Appellee,

v.

DEADWOOD CONGREGATION OF JEHOVAH WITNESSES, Defendant and Appellant.

No. 18113.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1993.

Decided Sept. 22, 1993.

Rehearing Denied Oct. 22, 1993.

---

Leroy Hill, Belle Fourche, for plaintiff and appellee.

Reed C. Richards, Richards and Richards, Deadwood, for defendant and appellant.

WUEST, Justice.

This is an appeal by the Deadwood Congregation of Jehovah Witnesses (Congregation) from a judgment finding it interfered with a contract to sell real property and did not acquire the property by adverse possession. Congregation also appeals the trial court's denial of a new trial or judgment notwithstanding the verdict. We affirm in part, reverse in part and remand.

### FACTS

Martha Marie Billings (Billings) acquired title to lots 9 through 12, block one, Riverside Addition near the City of Deadwood by tax deed from Lawrence County in 1934. Lots 5 through 8 were acquired by Henry Hallock (Hallock) in 1926. Hallock lived in a house on his property. A garage, which was torn down in 1988, and a fence were located near the boundary of lots 8 and 9. A survey in 1970 disclosed the garage was on the Billings property.

In the 1960s and 1970s Billings rented a warehouse on her property to Darrell Murray (Murray) for his used car business. Murray purchased the next-door Hallock property in 1966 and sold it to the Congregation in 1972. Congregation expanded its existing Kingdom Hall in 1984. Believing the boundary between lots 8 and 9 was the old garage and fence, the Congregation rented the garage to a third party for two years and tore down the deteriorating building in 1988.

Billings died in 1981. In 1990, Billings' estate and Elvis Hicks (Hicks) signed a contract for Hicks to purchase the property for $50,000. A subsequent survey disclosed that the Kingdom Hall and its adjacent parking lot encroached onto lot 9 of the Billings property.

Congregation was notified of the court hearing to confirm the estate's sale to Hicks. Congregation appeared at the hearing and claimed it had acquired the disputed portion of the property by adverse possession. Nonetheless, the court confirmed the sale.

Hicks then withdrew from the contract because the Kingdom Hall encroached onto the property and Congregation was claiming ownership through adverse possession. Billings brought an action to restrain Congregation from entering onto the land, for monetary damages from the loss of the sale, for reasonable rent for the encroachment and for the costs of removing the building from the land. Congregation counterclaimed claiming adverse possession.

At trial, the jury determined that Congregation had interfered with the sale of land to Hicks, that it had not acquired the land by adverse possession and awarded $55,822 in damages to Billings. Congregation moved for and was denied a judgment notwithstanding the verdict or a new trial.

Congregation appeals stating three issues. We address all issues, noting additional facts where necessary.

I.  DID THE TRIAL COURT ERR IN DENYING CONGREGATION'S MOTION TO DISMISS BILLINGS' CLAIM OF INTERFERENCE WITH THE CONTRACT FOR SALE?

Congregation first asserts the trial court erred in denying its motion to dismiss Billings' action for interference with contract. A motion to dismiss under SDCL 15–6–12(b)(5) tests the legal sufficiency of the pleading, not the facts which support it. *Hunt v. Hunt,* 309 N.W.2d 818, 820 (S.D. 1981). For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader. *Johnson v. Kreiser's, Inc.,* 433 N.W.2d 225, 226 (S.D.1988); *Janklow v. Viking Press,* 378 N.W.2d 875, 877 (S.D.1985). Our standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law? *See Jensen Ranch, Inc. v. Marsden,* 440 N.W.2d 762, 764 (S.D.1989).

The record discloses no trial court ruling on Congregation's motion to dismiss. We

stated the applicable rule in *American Fed. Sav. & Loan Ass'n v. Kass*, 320 N.W.2d 800 (S.D.1982):

> If the trial court fails to decide or rule on a motion, nothing is presented for review in the appellate court. Where a ruling on a motion or objection is reserved by the court, the moving party must subsequently obtain a direct ruling in order to preserve the matter for appellate review. The burden of demanding a ruling rests upon the party desiring it. "If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon."

*Id.* at 803 (citations omitted); *Nauman v. Nauman*, 336 N.W.2d 662, 663 (S.D.1983); *State v. Sickler*, 334 N.W.2d 677, 679 (S.D. 1983).

■ As there was no trial court ruling on Congregation's motion to dismiss, it was waived. Congregation's motion was not preserved for appeal to this court.

## II. DID CONGREGATION ESTABLISH ADVERSE POSSESSION BY CLEAR AND CONVINCING EVIDENCE?

■ Possession of property is adverse to the true owner where occupancy of the land beyond the true boundary line is actual, open, visible, notorious, continuous and hostile. *Taylor v. Tripp*, 330 N.W.2d 542, 544 (S.D.1983). This is so even though such occupancy of the land was due to mistake and without an intention to claim the land of another. *Johnson v. Bieglemeier*, 409 N.W.2d 379, 381–82 (S.D.1987). Adverse possession must be established by clear and convincing evidence. *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 422 (S.D.1980). The person holding legal title to the property is presumed to have possession of the property; therefore, the burden of proof is on the party claiming adverse possession. *Cuka*, 294 N.W.2d at 421–22.

■ Congregation claims adverse possession under SDCL 15–3–12 and 15–3–13. The statutory period for adverse possession under these statutes is twenty years. SDCL 15–3–1. Although Congregation did not pos-

sess the property until 1972, the principle of "tacking" allows it to add its own claims to that of previous adverse possessors under whom it claims a right of possession. *Walker v. Sorenson*, 64 S.D. 143, 148, 265 N.W. 589, 591 (1936). Under this theory, if Hallock's and Murray's possession of the garage and land was adverse to Billings' interest, Congregation could tack its years of possession onto theirs and meet the twenty year requirement.

■ Conflicting evidence was presented at trial as to whether Murray and Hallock were using the garage with the permission of Billings. Curtis LaLonde testified that Hallock had always used the garage and he believed that Hallock owned the property. Louis Billings testified on rebuttal that his mother had told him in the early 1950s that Hallock was allowed to use her garage in return for stopping creek erosion along her property. Murray rented Billings' property and owned an adjacent parcel; conflicting evidence was presented as to whether the garage was part of the property Murray rented or part of the property he owned. In 1972, Billings completed a quiet title action based upon a 1970 survey of the property but neither Murray nor the Congregation was expressly named as a defendant in the action. Testimony was also presented that Billings had a no trespassing sign placed on the garage in 1976 at a time she claimed Murray was late paying his rent.

■ What constitutes possession in any case is a question of fact and each case depends upon its own facts. *Cuka*, 294 N.W.2d at 423. Where conflicting evidence is present, it is a question of fact for the jury which is in the best position to judge the demeanor and credibility of the witnesses. *Mash v. Cutler*, 488 N.W.2d 642, 646 (S.D. 1992). It is evident from the verdict that the jury believed Hallock's and Murray's use of the property was not adverse to Billings. Therefore, tacking does not apply and Congregation failed to prove by clear and convincing evidence adverse use for the statutorily required twenty years.

■ The trial court's findings of fact shall not be set aside unless clearly erroneous.

SDCL 15–6–52(a); *State ex rel. Dep't of Transp. v. Garvin*, 456 N.W.2d 779, 781–82 (S.D.1990). There was evidence from which the jury could determine Congregation had failed to meet its burden of proving adverse possession; therefore, the judgment of the trial court is affirmed on this issue.

## III. DID THE TRIAL COURT ABUSE ITS DISCRETION BY FAILING TO GRANT A NEW TRIAL OR JUDGMENT NOTWITHSTANDING THE VERDICT?

■■■ Congregation motioned for a new trial or a judgment notwithstanding the verdict on the ground that the jury misapprehended the law in awarding damages. The trial court denied the motion. A motion for a new trial is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Wasserburger v. Consolidated Mgmt. Corp.*, 502 N.W.2d 256, 259 (S.D.1993); *Bankwest, Inc. v. Valentine*, 451 N.W.2d 732, 736 (S.D.1990); *Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D.1985).

SDCL 15–6–59(a)(6) provides in part:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law[.]

The jury received two instructions on how to calculate damages. Jury Instruction #20 provided:

If you decide the defendant has encroached upon plaintiff's property and did not have legal title to the property by adverse possession, you must then fix the amount of money which will reasonably and fairly compensate plaintiff for any of the following elements of loss or harm suffered in person or property proved by

the evidence to have been proximately caused by the encroachment:

1. Loss of use of the property since 1981.
2. Loss of rental income from the garage.
3. Loss of value of the property because of the encroachment.
4. Loss of the sale of the property to Elvis Hicks in 1990.
5. Cost or removal of the building and fence from the land.

Whether any of these elements or damages have been proved by plaintiff is for you to determine. Your verdict must be proved by the preponderance of the evidence and not upon speculation, guesswork, or conjecture.

Jury Instruction #22 provided in part:

Additionally, Defendant must show the difference between what the Plaintiff's property up to the split rail fence is currently worth as compared to the price offered to Plaintiff by Mr. Hicks. The damages may not exceed the difference between the current value and the amount offered by Mr. Hicks.

During deliberations, the jury sent the following question to the trial court: "Instruction No. 22: In awarding damages, how do we determine current worth of property? Does this mean that we must subtract the full and true value based upon the '92 assessment from the offered sale price of $50,000 from Hicks?"[1] The court answered this question by instructing the jury: "You must decide the case as best you can from the evidence presented." The jury then awarded the following damages:

| | | |
|---|---|---|
| Loss of Use of Property since 1981 .... | | –0– |
| Loss of Rental on Garage ............. | $ | 72.00 |
| Loss of Value because of Encroachment | $ | 5,750.00 |
| Loss of Sale to Hicks ................. | $ | 50,000.00 |
| Loss of Removal of Building and Fence | | –0– |

■■■ The jury instructions on damages were contradictory.[2] Instruction #20 suggests the measure of damages would be the amount of the contract for the sale of the

---

1. The assessed tax value of the property has fluctuated drastically, from $154,890 in 1990, to $4,750 in 1991, and then to $20,700 in 1992. Had the jury calculated damages in accord with its question it would have correctly calculated the benefit of the contract—the contract price less the current market value (50,000 – 20,7000 = 29,300).

2. Where there is no objection to instructions, they become the law of the case; therefore, the instructions are not before this court on appeal. SDCL 15–6–51(b); *Winburn v. Vander Vorst*, 74 S.D. 531, 55 N.W.2d 609 (1952); *Keller v. Merkel*, 73 S.D. 477, 44 N.W.2d 208 (1950).

property in 1992, while instruction # 22 indicates the difference between the value of the encroached portion of the property and the contract price would be the proper measure of damages. It is clear the jury awarded the entire sale price as per instruction # 20, not the loss of the benefit of the contract.

During subsequent argument before the trial court on Congregation's motion, the judge made the following statement:

> The only thing that might be—I don't know if the word is ambiguous—but when the verdict came back I know my reaction was that the jury had clearly rejected the adverse possession claim, they had found that the defendant had encroached on the plaintiff's property, they had found from the evidence a loss for rental income, they had calculated—And the jury poll that Mr. Richards' office did shows where the jury was coming from in calculating the loss of use of the property and the only one that I guess I had to maybe interpret in my own mind was what they meant by the $50,-000.00.[3] I interpreted that to mean that the jury had basically awarded the property to the church in exchange for having to pay the purchase price. Because if you have to move the addition and restore the plaintiff to the record boundary and then pay the $50,000.00, the estate is getting paid twice. But I think there is evidence to support the jury's verdict in all respects, so I'm going to deny the motion for judgment N.O.V. and deny the motion for new trial.

Where the jury verdict is a result of passion or prejudice or where it has palpably mistaken the rule of law by which damages in a particular case are to be measured, the verdict may be set aside. *Itzen v. Wilsey*, 440 N.W.2d 312, 314 (S.D.1989). Here, the jury was palpably mistaken as to the rule of law on how to measure damages. The trial court abused its discretion in not granting a new trial. We reverse the judgment and remand for a new trial on the issue of damages.[4] *Arcon Constr. Co. v. South Dakota Cement Plant*, 382 N.W.2d 668, 672 (S.D. 1986) (decision to retry the issue of damages means a retrial on all damages pleaded).[5]

The trial court's judgment as to tortious interference with contract for sale and adverse possession is affirmed. The judgment as to damages is reversed and remanded for a new trial.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.

3. After the verdict, Congregation polled several jurors who indicated the jury was unsure how to calculate damages. SDCL 19–14–7 and case law prohibit testimony by jurors as to how a verdict was reached absent allegations of external information or influence. *State v. Holloway*, 482 N.W.2d 306, 310 (S.D.1992) (affidavits of jurors not alleging extraneous information or improper outside influence are not admissible); *Shamburger v. Behrens*, 418 N.W.2d 299, 303 (S.D.1988). Evidence of this kind is inadmissible in the courts of South Dakota and will not be considered in this appeal.

4. The proper measure of damages for interference with a contract for sale is set forth in Restatement (Second) of Torts § 774A (1979) which provides in part:

> (1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
> (a) the pecuniary loss of the benefits of the contract or the prospective relation;
> (b) consequential losses for which the interference is a legal cause[.]

*See Johnson v. Schmitt*, 309 N.W.2d 838, 841 (S.D.1981) (the Restatement measurement of damages for interference with contractual relations sounds in tort and not in contract).

5. On retrial, the court may give the proper instructions and is not bound to give the same instructions given at the first trial.